**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:14-CV-313-GCM-DCK**

| | |
|---|---|
| **RUSSELL FRADY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's Motion For Summary Judgment" (Document No. 14) and "Defendant's Motion For Summary Judgment" (Document No. 15). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

**I.   BACKGROUND**

Plaintiff Russell Frady ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). This matter has traveled a long and winding road to arrive at this point. Plaintiff first filed an application for a period of disability and disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 405, on or about October 6, 2005, alleging an inability to work due to a disabling condition beginning September 20, 2000. (Transcript of the

Record of Proceedings ("Tr.") 1164, 311), see also, (Document No. 14-1, p.3) (citing Tr. 136). The first application resulted in denials, with no request for a hearing. Tr. 1164.

Plaintiff filed a second application for Title II and Title XVI benefits on or about December 8, 2006, also alleging an onset of disability on September 20, 2000. (Tr. 316, 1164); (Document No. 14-1, p.3). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on March 7, 2007, and again after reconsideration on June 14, 2007. (Tr. 154-157, 159-161). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition was not severe enough prior to the end of your insured period to be considered disabling. We realize that your condition prevented you from doing any of your past jobs, but it did not keep you from doing less demanding work. Based on your age, education, and past work experience, you could have done other work. Therefore, based on all of the medical and non-medical evidence, we have decided that you were not disabled on or before coverage ended according to the Social Security Act.
>
> Your mental condition was not severe enough prior to the end of your insured period to be considered disabling. You were able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.

(Tr. 159).

Plaintiff filed a timely written request for a hearing on June 29, 2007. (Tr. 163). On March 2, 2010, Plaintiff appeared and testified at a "third supplemental hearing" before Administrative Law Judge ("ALJ") John L. McFadyen. (Tr. 73-90, 123). In addition, Dr. Thomas E. Schott and Dr. Susan Bland, medical experts, Charlie A. Edwards, a vocational expert ("VE"), and Judith C. Fraser, Plaintiff's attorney, appeared at the hearing. Id. In addition, Plaintiff testified at hearings before ALJ McFadyen on May 8, 2009 and October 15, 2009. (Tr. 93-96, 99-116).

ALJ McFadyen issued an unfavorable decision on March 5, 2010, denying Plaintiff's claim. (Tr. 120-122, 123-130). ALJ McFadyen held that Plaintiff was not disabled between September 20, 2000 and December 31, 2006. (Tr. 130). On April 12, 2010, Plaintiff filed a request for review of the ALJ's decision which was granted by the Appeals Council on October 6, 2010. (Tr. 270-271, 272-276). The Appeals Council remanded the case for another hearing. (Tr. 272-276).

Plaintiff then appeared and testified at a hearing before Administrative Law Judge Sherman Schwartzberg on May 12, 2011. (Tr. 16). Donna J Bardsley, a vocational expert, and Leah Broker, Plaintiff's attorney, also appeared at the hearing. Id. ALJ Schwartzberg rendered an unfavorable decision on June 7, 2011, finding Plaintiff not disabled between October 6, 2005 and December 31, 2006. (Tr. 13-27). On July 15, 2011, Plaintiff again filed a request for review of the ALJ's decision, which was denied by the Appeals Council on September 27, 2011.[1] (Tr. 1-6, 11).

Plaintiff then appealed the final decision of the Commissioner to this Court on or about November 21, 2011. See Frady v. Astrue, 1:11cv315-MR-DLH. Following an unopposed motion by Defendant, the Court issued an "Order Of Remand" on May 22, 2012, finding that Plaintiff's Title XVI claim should be remanded pursuant to the Clark v. Astrue class action suit. (Tr. 1164, 1226-33). Plaintiff's Title II claim was subsequently dismissed. (Tr. 1225, 1298-1301) (Document No. 14-1, p. 3).

---

[1] During the pendency of the litigation of his 2005 and 2006 applications, Plaintiff filed a new (third) application for Title XVI supplemental security income benefits on or about June 29, 2011. (Document No. 14-1, p. 3). Plaintiff appeared and testified at a hearing held on March 20, 2013 before ALJ Charles Howard. (Document No. 14-2, p. 5). On April 2, 2013, ALJ Howard rendered a fully *favorable* decision, finding Plaintiff disabled **as of June 23, 2011**, the date the application for supplemental security income was filed, **through April 2, 2013**, the date of the decision. (Document No. 14-2, pp. 5, 10) (emphasis added). ALJ Howard noted that "[m]edical improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 24 months." (Document No. 14-2, p. 10).

Following remand, the SSA issued a "Notice Of Reconsideration" on Plaintiff's Supplemental Security Income Claim on or about April 3, 2013, again denying Plaintiff's claim. (Tr. 1225, 1302-03). The "Notice Of Reconsideration" stated in part:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. **This is covering 11/28/2006 to 06/22/2011, and it is felt that during that time period you had the ability to work**. You did have restrictions to the type of work you were able to do. You should have been able to do jobs that required only light lifting and jobs that did not require a lot of change in the work setting nor jobs that were stressful. We realize your condition keeps you from doing some types of work, but it does not keep you from doing less demanding work.

(Tr. 1302) (emphasis added). On May 31, 2013, Plaintiff requested a hearing before an Administrative Law Judge. (Tr. 1308-09).

Plaintiff appeared and testified at a third hearing before ALJ Charles Howard on July 17, 2014. (Tr. 1164-1179, 1181-1211). Dr. Charlie A. Edwards, a vocational expert, and Leah Broker, Plaintiff's attorney, also appeared at the hearing. (Tr. 1164). On August 11, 2014, ALJ Howard issued an *unfavorable* decision, finding Plaintiff **not disabled between November 28, 2006 and June 22, 2011**. (Tr. 1178-79) (emphasis added). ALJ Howard's August 11, 2014 decision, regarding the time period of November 28, 2006 through June 22, 2011, is the subject of the appeal currently before this Court. (Tr. 1164-79).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on December 10, 2014. (Document No. 1). On January 5, 2015, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's Motion For Summary Judgment" (Document No. 14) and "Plaintiff's Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 14-1) were

filed July 15, 2015; and "Defendant's Motion For Summary Judgment" (Document No. 15) and "Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment" (Document No. 16) were filed September 17, 2015.

Plaintiff *declined* to file a reply brief and the time to do so has lapsed. See "Social Security Briefing Order," Case No. 3:13-mc-198-FDW, Document No. 1 (W.D.N.C. Dec. 23, 2013).

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599

5

(4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between November 28, 2006, and June 22, 2011.[2] (Tr. 1164). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the

---

[2] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

6

>     listings in appendix 1, and meets the duration requirement -
>     if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 1178).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity from November 28, 2006 through June 22, 2011, the day prior to the day he was determined disabled. (Tr. 1166). At the second step, the ALJ found that history of left arm injury with possible brachial plexus injury, insulin dependent diabetes mellitus, affective disorder, anxiety related disorder, and a personality disorder, were severe impairments.[3] (Tr. 1167). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 1167).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work as defined in 20 C.F.R. 416.967(b), with the following limitations:

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

> no climbing of ladders, ropes or scaffolds; no overhead reaching with the left arm; no more than occasional reaching otherwise with the left arm; and no concentrated exposure to pulmonary irritants or to hazards. Mentally, the claimant can perform and maintain concentration for simple routine repetitive tasks, adapt to routine changes in the work setting, and he is limited to work that does not require public interaction or more than occasional interaction with coworkers and supervisors.

(Tr. 1169). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a construction worker or sandblaster. (Tr. 1177). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 1178). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included inspector, light janitorial work after office hours, and sorter. (Tr. 1178). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between November 28, 2006 and June 22, 2011. (Tr. 1178).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to consider the approval of benefits by the Social Security Administration in 2013 for a subsequent period; (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ erred in finding there were jobs in the national economy Plaintiff could hold. (Document No. 14-1).

8

**A.     2013 ALJ Decision**

In his first assignment of error, Plaintiff argues that this matter should be remanded for consideration of ALJ Howard's April 2, 2013 favorable decision finding Plaintiff disabled between June 23, 2011 and April 2, 2013, as "new and material evidence." (Document No. 14-1, pp.10-12; Document No. 14-2). Plaintiff contends that ALJ Howard's August 11, 2014 unfavorable decision, currently under review, fails to "discuss or distinguish his findings from the 2013 approval with his finding for the period prior to that approval that led to his 2014 denial." (Document No. 14-1, p. 10). Although Plaintiff contends that there is "new and material evidence" that should have been considered, he declined to express his disagreement with the ALJ decision by submitting a written exception to the Appeals Council, opting instead to directly file this action in federal court. See (Tr. 1161-1162).

Plaintiff contends that both the 2013 decision and the 2014 decision involve the same severe impairments and the same RFC. (Document No. 14-1, p.11). Plaintiff notes that the ALJ, in posing hypotheticals to the vocational experts based on substantively identical RFCs, arrived at different conclusions based on VE testimony regarding immediately adjacent time periods. (Document No. 14-1, p. 9).

Plaintiff argues that "[w]here a second Social Security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence." (Document No. 14-1, p.12) (citing Hays v. Astrue, 488 F.Supp.2d 560, 565 (W.D.Va. 2007) and Floyd v. Astrue, 2010 WL 2326508, at *3 (E.D.N.C. Apr. 10, 2010)). Plaintiff concludes that since "the Commissioner did not consider or distinguish the 2013 approval in the present unfavorable determination, this claim should be remanded." (Document No. 14-1, p. 12).

9

In response, Defendant contends that substantial evidence supports the decision at issue, and that the prior ALJ decision does not constitute new and material evidence. (Document No. 16, p. 5). Defendant argues that "a subsequent decision deeming an individual disabled is not 'new and material' evidence." Id. Rather, the "inquiry turns on the evidence underlying the decision, not the decision itself." Id. Here, Defendant notes that the evidence distinguishing the 2013 and 2014 decisions is the vocational expert testimony. Id. "The vocational expert who testified at the hearing for the 2014 Decision identified multiple categories of jobs someone like Mr. Frady could perform, and the vocational expert who appeared in the favorable disability decision did not." Id. (comparing Tr. 1210 and Document No. 14-2, p. 10).

Defendant observes that ALJ Howard "acknowledged and considered" his previous 2013 decision finding Plaintiff disabled, when he issued his 2014 decision finding Plaintiff not disabled for a previous time period. (Document No. 16, p. 6) (citing Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (defining "new" evidence as evidence that is not duplicative or cumulative); see also, (Tr. 1164, 1166). At the hearing underlying the disputed decision, the ALJ specifically noted that Plaintiff had been previously determined to be disabled as of June 22, 2011. Id. (citing Tr. 1186). In fact, Plaintiff's counsel specifically states to ALJ Howard: "Correct, 6/22/11 was *your* approval - -." (Tr. 1186) (emphasis added). Defendant also points out that the ALJ's decision involved "a closed period of alleged disability starting on November 28, 2006, the date Mr. Frady filed for SSI, and ending on June 22, 2011, the day before he was deemed disabled pursuant to the 2013 decision." Id.

Defendant goes on to argue that the 2013 decision does not undermine the 2014 decision because the vocational expert testimony was different in each respective decision. (Document No. 16, p. 6). Defendant asserts that in the 2013 decision, there was no evidence to support that jobs

10

existed in the national economy that the Plaintiff could perform in the time period in dispute, whereas in the decision under review, the VE identified three job categories with over 2.5 million positions available nationwide. (Document No. 16, pp. 6-7); (citing Document 14-2, p. 10; Tr. 1178, 1210). Moreover, Defendant asserts that the ALJ's statement in the 2013 decision that Plaintiff "was expected to improve with treatment" provides support for the vocational expert's findings. (Document No. 16, p. 8) (citing Document No. 14-2, p. 10). Finally, Defendant notes "the jobs the vocational expert identified were consistent with the Dictionary of Occupational Titles." (Document No. 16, p. 7). On this basis, Defendant argues that the conflict "calls into question the basis for the 2013 decision, not the conclusions reached in the 2014 decision." (Document No. 16, p. 7).

In conclusion, Defendant again notes that a subsequent favorable decision is not "new and material" evidence. (Document No. 16, p.8) (citing Baker v. Comm'r of Soc. Sec'y, 520 F.App'x 228, 299 n.1 (4th Cir. 2013) and Watkins v. Colvin, 1:13cv324-MR, 2015 WL 196383, at *1-2 (W.D.N.C. Jan. 15, 2015) ("Plaintiff's subsequent favorable decision standing alone is not new or material evidence, according to Baker, 520 F.App'x at 229.")). See also, Peak v. Colvin, 1:13cv321-MR, 2014 WL 5529484, at *1-3 (W.D.N.C. Oct. 31, 2014) (This Court declined to accept subsequent favorable disability decision, effective one day after the current ALJ's decision, as new evidence or cause for remand).

The undersigned agrees that contrary to Plaintiff's argument, ALJ Howard considered the prior decision finding Plaintiff disabled for a subsequent time period, beginning June 23, 2011. (Tr. 1164, 1166, 1186). ALJ Howard specifically stated in his 2014 decision under "Jurisdiction And Procedural History":

> The undersigned notes that the claimant filed a subsequent application, and he was found disabled as of June 23, 2011 (the

11

> protective filing date of the Title XVI application). Therefore, the
> period in question is November 28, 2006 through June 22, 2011.

(Tr. 1164); see also (Tr. 1166) ("…through June 22, 2011, the day prior to the day he was determined disabled").

Not only did ALJ Howard note the prior decision regarding a later time period, *ALJ Howard was the author of the 2013 decision.* Id. While it might have helped bring more clarity to the instant review if ALJ Howard had explicitly distinguished his 2014 decision from his 2013 decision, Plaintiff has not cited any authority requiring such explanation.

The string of cases from the Eastern District of North Carolina Plaintiff cites in support of remand appear to involve circumstances where there was a subsequent decision that was not considered, and/or not even available to the ALJ. See (Document No. 14-1, p.11). Unlike those cases, here ALJ Howard knew about the subsequent decision, discussed it, and was familiar with it – because it was his own work. (Tr. 1164-1179).

Like Defendant, the undersigned is inclined to observe that the full record raises more questions about the 2013 decision, than the 2014 decision. (Document No. 16, p. 7). As has been noted, ALJ Howard expected Plaintiff to improve and explicitly recommended "continuing disability review." (Document No. 14-2, p.10). In addition, the undersigned is persuaded that the decisions of the Fourth Circuit and this Court identified above on this issue are more applicable than the authority cited by Plaintiff. Under the circumstances of this case, the undersigned is not persuaded that ALJ's Howard 2013 decision is "new and material" information requiring remand. Moreover, the 2014 decision standing on its own appears to be well-reasoned and supported by substantial evidence.

B.  **Credibility**

Next, Plaintiff contends that the ALJ erred in assessing his credibility. (Document No. 14-1, pp. 12-15). Plaintiff first disagrees with the ALJ's observation that he "did not receive the type of treatment **during the period at issue** that one would expect for a totally disabled person, as most of his presentations to treatment providers were generally benign in nature, and the treatment received was generally conservative." (Document No. 14-1, pp.12-13) (quoting Tr. 1177). Summarizing the medical record, Plaintiff concludes that his "complaints and the treatment received was not conservative" or "benign." (Document No. 14-1, p.13).

Secondly, Plaintiff rejects the ALJ's citation to a medical record where the treatment provider noted: "I think he's exaggerating this today…," regarding Plaintiff's alleged left shoulder pain. (Document No. 14-1, pp. 13-14) (citing Tr. 1177 and quoting Tr. 778). Plaintiff suggests that the treatment provider's notation of perceived exaggeration of a condition should be discounted because in the "totality" of his office visits, Plaintiff's truthfulness was not questioned by dozens of providers. (Document No. 14-1, p.14).

Finally, Plaintiff makes a general assertion that ALJ Howard "failed to follow applicable standards in his credibility and pain assessments, and his conclusions were not supported by substantial evidence." (Document No. 14-1, p.14).

The undersigned is not persuaded by Plaintiff's arguments. Notably, ALJ Howard found Plaintiff "generally credible" regarding the time period June 23, 2011 through April 2, 2013; but "not entirely credible" for the time period November 28, 2006 through June 22, 2011. Compare (Document No. 14-2, p. 10 and Tr. 1170). Not surprisingly, Plaintiff was determined to be less credible regarding the time period where the ALJ was not persuaded he was disabled, and found generally credible regarding the time period where the ALJ agreed that Plaintiff was disabled.

13

Again, the undersigned is not overly concerned that the ALJ found Plaintiff not disabled for one time period, but disabled for a later time period. In fact, the ALJ was clear that his doubts about Plaintiff's credibility involved his treatment and other factors "during the period at issue." (Tr. 1177). As will be discussed below, Defendant effectively rebuts Plaintiff's credibility claim.

Defendant argues that the ALJ did conduct a proper credibility analysis. (Document No. 16, pp. 8-16). Defendant notes that the ALJ acknowledged that Plaintiff's medically determinable impairments could cause the limitations alleged, and that the ALJ then considered all of the evidence of record and deemed Plaintiff's subjective allegations "not entirely credible." (Document No. 16, p.10) (citing Tr. 1170, 1177). Defendant asserts that the ALJ engaged in a detailed discussion of the evidence of record and fully explained his decision. (Document No. 16, pp. 10-11).

In support, Defendant engages in a thorough review of the medical record. (Document No. 16, pp. 11-14). Defendant notes that despite Plaintiff's complaints of problems with his left arm/shoulder, the evidence shows that he was not a candidate for shoulder surgery, that his condition improved with prescription medication, and that other treatment notes recommended "conservative management." (Document No. 16, p. 11) (citing Tr. 947-951, 780); see also, (Tr. 1172) (citing Tr. 770-785). Moreover, in contrast to Plaintiff's attempts to minimize Dr. Don Teater's view that Plaintiff was exaggerating and had no significant atrophy in his left shoulder and arm muscles as an isolated statement, Defendant observes that:

> the record is replete with examination findings for the period at issue repeatedly confirming a lack of any atrophy in Mr. Frady's shoulder either explicitly or implicitly by normal or mild findings relating to the shoulder. (*See, e.g.*, Tr. 744 ("no evidence of atrophy in the left arm or hand"), 951 (normal strength), 968 (no abnormal findings relating to Mr. Frady's shoulder after he "jumped out of a moving vehicle"), 973 (shoulder x-ray showing normal finding after jumping from a vehicle), 977 (normal range of motion in shoulders),

> 1048 ("complete" range of motion in the shoulder and "[n]o deformity or muscle wasting" despite Mr. Frady's complaints of pain persisting since 2000).)

(Document No. 16, p. 13).

In addition, Defendant points out that the ALJ decision recognizes Plaintiff had continuing problems from diabetes, and that he was "noncompliant with medications," and "did not check his blood sugars." (Tr. 1173) (citing Tr. 979-1077); (Document No. 16, pp. 11-12). Also, following a laparoscopic cholecystectomy surgery, Plaintiff's primary care physician assessed

> [p]ost-op abdominal pain with possible drug seeking behavior. . . . I am concerned about his frequent narcotic use over the past several months. This documented on the North Carolina controlled substances web page. I will give him enough Tylenol #3 to last him until Friday when he sees Dr. Sharpton.

(Tr. 1017); see also (Tr. 1022-23), (Document No. 16, p.12).

Defendant also notes that other medical records "show grossly normal or mild problems throughout the period at issue, not the completely disabling pain Mr. Frady described. (*See, e.g.*, Tr. 743-745 (normal musculoskeletal findings during consultative examination), 778, 784, 927, 930 (describing normal CT scan), 944, 947 (normal nerve studies), 951 (normal strength findings), 968, 970-973 (normal CT and x-ray scans))." (Document No. 16, p. 13).

In addition to evidence probative of treatment, Defendant asserts that the ALJ discussed evidence of other relevant factors set forth in 20 C.F.R. § 416.929(c)(3), including activities of daily living. (Document No. 16, pp. 13-14) (citing Tr. 1167). A third party reported in December 2006 that Plaintiff could "shop in stores for food, cleans, and does laundry . . . could perform personal care with no problems, including dressing, bathing, caring for hair, shaving, feeding self, and using toilet." (Tr. 1167) (citing Tr. 383-393). The ALJ noted Plaintiff's own statement in January 2007 of "doing his own laundry and grocery shopping." Id. (citing Tr. 740-748). And the

15

ALJ cited a December 2009 consultative examination where Plaintiff reported he helped around the house by taking trash to the dumpster, watched television, walked in the yard for exercise, socialized with his aunt and girlfriend, wrote letters to his mother, and went to the store with his girlfriend. (Tr. 1167) (citing 933-943).

The undersigned also finds it noteworthy that the ALJ described a letter from social worker Angela Renner, drafted in March 2013, that reported mental health symptoms that "more than moderately affect his ability to interact with the general public, with coworkers, supervisors, and his ability to carry out instructions and maintain concentration, persistence , and pace in a daily work setting." (Tr. 1176). The ALJ also observed that Ms. Renner "reported he was clearly disabled and unable to work." <u>Id.</u> The ALJ specifically stated that Ms. Renner's report was based on "care coordination services since August 2012, which the undersigned notes is **outside the period in question**." (Tr. 1176) (emphasis added). While not explicit, this statement seems to suggest that the ALJ found that Plaintiff's mental health worsened in 2012-2013, which may, at least in part, explain why he found Plaintiff disabled during the later time period. The ALJ then noted that Ms. Renner's opinion was "not consistent with the evidence of record . . . and conservative treatment **during the period at issue**." (Tr. 1176-77) (emphasis added).

Based on Defendant's brief and the ALJ's decision, the undersigned is convinced that the ALJ's credibility assessment was proper and supported by substantial evidence of record that the ALJ identified and discussed.

## C. Vocational Expert

In his final alleged error, Plaintiff contends that the ALJ's finding at Step Five was based on a hypothetical to the VE that was not supported by the record. (Document No. 14-1, pp. 15-16). Plaintiff's final argument is somewhat conclusory, and seems to contend that the ALJ failed

16

to provide evidence that demonstrates work exists that Plaintiff could perform because one of the two hypothetical posed "is not supported by the record" (Document No. 14-1, p.16); and/or Plaintiff re-asserts the same position discussed above, that the ALJ's determination (and the VE's testimony) is different than that issued for the later disability time period. Id.

In response, Defendant argues that the ALJ asked the VE to provide testimony on whether an individual with limitations similar to those in Plaintiff's RFC would be able to work jobs available in significant numbers in the economy. (Document No. 16, p.17) (citing Tr. 1209). Defendant observes that the ALJ tailored the hypothetical to "mirror precisely Mr. Frady's residual functional capacity, including his limitation to 'light exertion.'" Id. Defendant further observes that the jobs identified involve light work, not sedentary as claimed by Plaintiff. (Document No. 16, p.18).

The undersigned again finds Defendant's argument persuasive, and agrees that Plaintiff's third alleged error does not provide an adequate basis for disturbing the ALJ's decision.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's Motion For Summary Judgment" (Document No. 14) be **DENIED**; "Defendant's

Motion For Summary Judgment" (Document No. 15) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: August 8, 2016

David C. Keesler
United States Magistrate Judge